# EXHIBIT B

*ANNEX I*

## CERTIFICATE CONCERNING A JUDGMENT IN CIVIL AND COMMERCIAL MATTERS

Article 53 of Regulation (EU) No 1215/2012 of the European Parliament and of the Council on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters

1. COURT OF ORIGIN

1.1. Name:

Commercial Court (QBD)

1.2. Address:

1.2.1. Street and number/PO box

Royal Courts of Justice, Rolls Building, 7 Rolls Buildings, Fetter Lane

1.2.2. Place and postal code

London, UK EC4A 1NL

1.2.3. Member State:

AT ☐ BE ☐ BG ☐ CY ☐ CZ ☐ DK ☐ DE ☐ EE ☐ EL ☐ ES ☐ FI ☐ FR ☐ HR ☐ HU ☐ IE ☐ IT ☐ LT ☐ LU ☐ LV ☐ MT ☐ NL ☐ PL ☐ PT ☐ RO ☐ SE ☐ SI ☐ SK ☐ UK ☒

1.3. Telephone

+4420 7947 7357

1.4. Fax:

+44870 761 7725

1.5. E-mail (if available):

Comct.issue1@justice.gov.uk

2. CLAIMANT(S) (¹)

2.1. Surname and given name(s)/name of company or organisation:

Banco San Juan Internacional, Inc

2.2. Identification number (if applicable and if available):

2.3 Date (dd/mm/yyyy) and place of birth or if legal person of incorporation/formation/registration (if relevant and if available):

2.4. Address:

2.4.1. Street and number/PO box:

Galeria San Patricio - Suite #207, B-5 Tabonuco Street

2.4.2. Place and postal code:

Guaynabo, 00968

2.4.3. Country:

AT ☐ BE ☐ BG ☐ CY ☐ CZ ☐ DK ☐ DE ☐ EE ☐ EL ☐ ES ☐ FI ☐ FR ☐ HR ☐ HU ☐ IE ☐ IT ☐ LT ☐ LU ☐ LV ☐ MT ☐ NL ☐ PL ☐ PT ☐ RO ☐ SE ☐ SI ☐ SK ☐ UK ☐ ☒ Other (please specify):

Puerto Rico

(¹) Insert information for all claimants if this judgment concerns more than one.

Generated by the European e-Justice Portal

**Exhibit B - 1**

2.5. E-mail (if available):

3. Defendant(s) (¹)

3.1. ~~Surname and given name(s)~~/name of company or organisation:

> PDVSA PETROLEO, S.A.

3.2. Identification number (if applicable or if available):

3.3 Date (dd/mm/yyyy) and place of birth or if legal person of incorporation/formation/registration (if relevant and if available):

3.4. Address:

3.4.1. Street and number/PO box:

> PDVSA PETROLEO, S.A., C/O Maples and Calder, 11th Floor, 200 Aldersgate Street

3.4.2. Place and postal code:

> London, EC1A 4HD

3.4.3. Country:

AT ☐  BE ☐  BG ☐  CY ☐  CZ ☐  DK ☐  DE ☐  EE ☐  EL ☐  ES ☐  FI ☐  FR ☐  HR ☐  HU ☐  IE ☐  IT ☐
LT ☐  LU ☐  LV ☐  MT ☐  NL ☐  PL ☐  PT ☐  RO ☐  SE ☐  SI ☐  SK ☐  UK ☒
☐ Other (please specify):

3.5. E-mail (if available):

4. THE JUDGMENT

4.1. Date (dd/mm/yyyy) of the judgment:

> 9  /07  /2021

4.2. Reference number of the judgment:

> [2021] EWHC 1949 (Comm)

4.3. The judgment was given in default of appearance:

4.3.1.    ☒ No

4.3.2.    ☐ Yes (please indicate the date (dd/mm/yyyy) on which the document instituting the proceedings or an equivalent document was served on the defendant):

> /  /

4.4. The judgment is enforceable in the Member State of origin without any further conditions having to be met:

4.4.1.    ☒ Yes (please indicate the date (dd/mm/yyyy) on which the judgment was declared enforceable, if applicable):

> 24  /07  /2021    The Judgment Order of 9 July 2021 provides for payment within 14 days of the order (ie., before 24 July 2021) after which the Judgment Order is enforceable.

4.4.2.    ☐ Yes, but only against the following person(s)

4.4.3.    ☐ Yes, but limited to part(s) of the judgment (please specify)

---

(¹) Insert information for all defendants if the judgment concerns more than one.

**Exhibit B - 2**

4.4.4.  ☐ The judgment does not contain an enforceable obligation

4.5. As of the date of issue of the certificate, the judgment has been served on the defendant(s):

4.5.1.  ☒ Yes (please indicate the date of service (dd/mm/yyyy) if known):

21 /07 /2021

4.5.1.1 The judgment was served in the following language(s):

| | | |
|---|---|---|
| ☐ BG | ☐ ES | ☐ CS |
| ☐ DA | ☐ DE | ☐ ET |
| ☐ EL | ☒ EN | ☐ FR |
| ☐ HR | ☐ GA | ☐ IT |
| ☐ LV | ☐ LT | ☐ HU |
| ☐ MT | ☐ NL | ☐ PL |
| ☐ PT | ☐ RO | ☐ SK |
| ☐ SL | ☐ FI | ☐ SV |
| ☐ Other (Please specify (ISO-code)) | | |

4.5.2.  ☐ Not to the knowledge of the court

4.6. Terms of the judgment and interest:

4.6.1. Judgment on a monetary claim ($^3$)

4.6.1.1. Short description of the subject-matter of the case:

> The Claimant sought payment of amounts due under a credit agreement dated 6 April 2017 (the 2017 Credit Agreement) between the (i) Claimant as lender; (ii) parent company of the Defendant, Petróleos de Venezuela, S.A. (PDVSA), as borrower; and (iii) Defendant as guarantor. Following an Event of Default under the 2017 Credit Agreement, on 3 December 2018 the Claimant accelerated all amounts outstanding under the 2017 Credit Agreement and made a demand for immediate payment of those amounts. Payment of the amounts owing under the 2017 Credit Agreement was not forthcoming, and having issued proceedings against PDVSA seeking payment of those amounts, on 4 November 2020 the Claimant was awarded judgment in its favour in the High Court of Justice, Business and Property Courts of England and Wales, Commercial Court (QBD). Subject to Article IX of the 2017 Credit Agreement, the Defendant in these proceedings irrevocably guarantees (as primary obligor and not merely as surety) PDVSA's obligations under the 2017 Credit Agreement. Accordingly the Claimant issued proceedings against the Defendant as the guarantor of the 2017 Credit Agreement and, on 9 July 2021, the Court held that the Defendant had no real prospect of defending the claim and issued judgment in respect of the amounts sought by the Claimant.

4.6.1.2. The court has ordered

> PDVSA PETROLEO, S.A.

~~(surname and given name(s)/~~name of the company or organisation) ($^4$)

has to make a payment to:

> BANCO SAN JUAN INTERNACIONAL INC

~~(surname and given name(s)/~~name of the company or organisation)

4.6.1.2.1. If more than one person has been held liable for one and the same claim, the whole amount may be collected from any one of them:

4.6.1.2.1.1.  ☐ Yes

4.6.1.2.1.2.  ☒ No

4.6.1.3. Currency:

| | | | | |
|---|---|---|---|---|
| ☐ Euro (EUR) | ☐ Bulgarian lev (BGN) | ☐ Czech koruna (CZK) | ☐ Danish krone (DKK) | ☐ Croatian kuna (HRK) |
| ☐ Hungarian forint (HUF) | ☐ Polish zloty (PLN) | ☐ Pound Sterling (GBP) | ☐ Romanian leu (RON) | ☐ Swedish krona (SEK) |
| ☒ Other (please specify ISO code): | | | | |
| USD | | | | |

($^3$) If the judgment only concerns costs relating to a claim which has been decided in an earlier judgment, leave point 4.6.1 blank and go to point 4.7.
($^4$) If more than one person has been ordered to make a payment, insert information for all persons.

**Exhibit B - 3**

4.6.1.4. Principal amount:

> 39,270,078

4.6.1.4.1.  ☒ Amount to be paid in one sum:

4.6.1.4.2.  ☐ Amount to be paid in instalments ([1])

| Due date (dd/mm/yyy): | Amount: |
|---|---|
| / / | |
| / / | |

4.6.1.4.3  ☐ Amount to be paid regularly:

4.6.1.4.3.1. ☐ per day

4.6.1.4.3.2. ☐ per week

4.6.1.4.3.3. ☐ other (state frequency)

4.6.1.4.3.4. From date (dd/mm/yyyy) or event:

4.6.1.4.3.5. If applicable, until (date (dd/mm/yyyy) or event):

(date (dd/mm/yyyy) or event if applicable)

4.6.1.5. Interest if applicable:

4.6.1.5.1. Interest:

4.6.1.5.1.1. ☐ Not specified in the judgment

4.6.1.5.1.2. ☒ Yes, specified in the judgment as follows:

4.6.1.5.1.2.1. Amount:

or:

4.6.1.5.1.2.2. Rate

> Interest shall accrue on the principal debt amount of US$30,951,078, at 11% per annum under Loan 1 and 10.8% per annum under Loan 2

☐ %    **NOTE: "Loan 1" and "Loan 2" are defined in the 2017 Credit Agreement and the amounts owing here are pursuant to the terms of that agreement. Loan 1 amounts to USD 20 719 446 and Loan 2 amounts to USD 10 231 632.**

4.6.1.5.1.2.3 Interest due

from

> 09/07/2021

(date (dd/mm/yyyy) ~~or event~~)

to

> Date of payment

(date (dd/mm/yyyy) ~~or event~~) ([2])

4.6.1.5.2.  ☐ Statutory interest (if applicable) to be calculated in accordance with

4.6.1.5.2.1. Interest due

from

---

([1]) Insert information for each instalment.
([2]) Insert information for all periods if more than one.

**Exhibit B - 4**

(date (dd/mm/yyyy) or event)

to

(date (dd/mm/yyyy) or event) (⁶)

4.6.1.5.3.  ☐ Capitalisation of interest (if applicable, please specify):

4.6.2. Judgment ordering a provisional, including a protective, measure:

4.6.2.1. Short desciption of the subject-matter of the case and the measure ordered:

4.6.2.2. The measure was ordered by a court having jurisdiction as to the substance of the matter

4.6.2.2.1.  ☐ Yes

4.6.3. Other type of judgment:

4.6.3.1. Short desciption of the subject-matter of the case and the rulling of the court:

4.7. Costs (⁷):

4.7.1. Currency:

☐ Euro (EUR)    ☐ Bulgarian lev (BGN)    ☐ Czech koruna (CZK)    ☐ Danish krone (DKK)    ☐ Croatian kuna (HRK)

☐ Hungarian forint (HUF)    ☐ Polish zloty (PLN)    ☒ Pound Sterling (GBP)    ☐ Romanian leu (RON)    ☐ Swedish krona (SEK)

☐ Other (please specify ISO code):

4.7.2. The following person(s) against whom enforcement is sought has/have been ordered to bear the costs:

4.7.2.1. Surname and given name(s)/name of company or organisation: (⁸)

PDVSA PETROLEO, S.A.

4.7.2.2. If more than one person has been ordered to bear the costs, the whole amount may be collected from any one of them:

4.7.2.2.1.  ☐ Yes

4.7.2.2.2.  ☐ No

4.7.3. The costs which recovery is sought are as follows (⁹):

4.7.3.1.  ☐ The costs have been fixed in the judgment by way of a total amount (please specify amount)

4.7.3.2.  ☐ The costs have been fixed in the judgment by way of a percentage of total costs (please specify percentage of total)

4.7.3.3.  ☐ Liability for the costs has been determined in the judgment and the exact amounts are as follows:

4.7.3.3.1.  ☐ Court fees:

4.7.3.3.2.  ☐ Lawyers' fees:

(⁶) Insert information for all periods if more than one.
(⁷) This point also covers situations where the costs are awarded in a separate judgment
(⁸) Insert information for all persons if more than one.
(⁹) In the event that the costs may be recovered from several persons, insert the breakdown for each person seperately

Generated by the European e-Justice Portal

**Exhibit B - 5**

4.7.3.3.3. ☐ Cost of service of documents:

4.7.3.3.4. ☐ Other:

4.7.3.4. ☒ Other (please specify)

The Defendant is to pay the Claimant's costs on the indemnity basis subject to detailed assessment if not agreed.

4.7.4. Interest on costs:

4.7.4.1 ☒ Not applicable

4.7.4.2 ☐ Interest specified in the judgment

4.7.4.2.1 ☐ Amount

or

4.7.4.2.2. ☐ Rate

%

4.7.4.2.2.1. Interest due

from

(date (dd/mm/yyyy) or event)

to

(date (dd/mm/yyyy) or event) (*)

4.7.4.3. ☐ Statutory interest (if applicable) to be calculated in accordance with (please specify relevant statute):

4.7.4.3.1. Interest due from

from

(date (dd/mm/yyyy) or event)

to

(date (dd/mm/yyyy) or event) (*)

4.7.4.4 ☐ Capitalisation of interest (if applicable, please specify):

Done at:

on:

| X | /08 | /2021 |

(*) Insert information for all periods if more than one.

6/7

**Exhibit B - 6**

Signature and/or stamp of the court of origin:

David Cook

8·10·2c



**Master David Cook**

Room E112
Royal Courts of Justice
London, WC2A 2LL



**Exhibit B - 7**



Neutral Citation Number: [2021] EWHC 1949 (Comm)

Case No: CL-2020-000834

## IN THE HIGH COURT OF JUSTICE
## BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES
## COMMERCIAL COURT (QBD)

The Rolls Building
7 Rolls Buildings
Fetter Lane
London EC4A 1NL

Date: 09/07/2021

**Before**:

### DAVID EDWARDS QC
### (sitting as a Judge of the High Court)
- - - - - - - - - - - - - - - - - - - - -

**Between**:

BANCO SAN JUAN INTERNACIONAL, INC.                **Claimant**
- and -
PDVSA PETRÓLEO, S.A.                               **Defendant**

- - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - -

**MR. ADAM AL-ATTAR** and **MR. JAMIL MUSTAFA** (instructed by **Allen & Overy LLP**)
for the **Claimant**

**THE DEFENDANT did not appear and was not represented**

- - - - - - - - - - - - - - - - - - - - -

## Approved Judgment

Transcript of the Stenograph Notes of Marten Walsh Cherer Ltd.,
2nd Floor, Quality House, 6-9 Quality Court, Chancery Lane, London WC2A 1HP
Telephone No: 020 7067 2900 DX: 410 LDE
Email: info@martenwalshcherer.com
Web: www.martenwalshcherer.com

**Exhibit B - 9**

# DAVID EDWARDS, QC:

## Introduction

1.  The application before me is an application by the claimant, Banco San Juan Internacional, Inc, which I will refer to as BSJI, made by application notice dated 12th May 2021, first, for permission pursuant to CPR rule 24.4(1) to apply for summary judgment notwithstanding the fact that the defendant has not filed an acknowledgment of service, and secondly, for summary judgment pursuant to CPR rule 24.2 on the grounds that the defendant has no real prospect of successfully defending the claim and that there is no other compelling reason why the claim should be disposed of at a trial.

2.  The applications are supported by the first witness statement of Oliver Troen, dated 12th May 2021, and the second witness statement of Mr. Troen, dated 6th July 2021. Mr. Troen, I should say, is an associate at Allen & Overy LLP, BSJI's solicitors.

3.  In terms of the structure of this judgment I propose to deal, first, with the nature of the claim and the procedural background. I will then deal with service, the question of whether BSJI should have permission to apply for summary judgment, and finally, with the application for summary judgment itself.

4.  The defendant has not appeared at the hearing of this application and so I must additionally deal with the question of whether it is right for me to proceed in its absence. Although it does not appear that the defendant in fact opposes the making of an order in the terms now sought, the defendant does not consent to such an order, and it thus has remained for BSJI to satisfy me that it has met the necessary requirements for summary judgment and indeed the requirements in relation to the procedural applications. Despite the absence of the defendant, I have, of course, scrutinised the materials placed before me carefully, and I have confirmed with Mr. Al-Attar that he has raised with me any points that the defendant could properly raise.

## The nature of the claim and the procedural history

5.  I turn then to the nature of the claim and the procedural history.

6.  BSJI is a bank incorporated in Puerto Rico. The defendant is an operating subsidiary of the Venezuelan state-backed oil and gas company Petróleos de Venezuela, S.A. For convenience, I will refer in the remainder of this judgment to Petróleos de Venezuela S.A. as PDVSA and to the defendant simply as the defendant.

### The 2017 Credit Agreement

7.  On 6th April 2017, BSJI as lender entered into a Credit Agreement with PDVSA as Borrower and the defendant as Guarantor under the terms of which BSJI provided PDVSA with a credit facility in the aggregate principal amount of US$519,385,594. I will refer to this as the 2017 Credit Agreement.

8.  The facility comprised two term loans, each to be used for a different engineering project. Loan 1 was a loan in the amount of US$323,838,761 and Loan 2 was a loan in the amount of US$195,544,833. There was an earlier Credit Agreement between

**Exhibit B - 10**

BSJI and PDVSA, which I will call the 2016 Credit Agreement. The defendant was not party to that agreement, and though it features in the procedural history, it is irrelevant to the present claim.

9. As set out in Mr. Troen's first statement and in the exhibits to it, to which Mr. Al-Attar has taken me, the loan amounts were fully drawn down under the 2017 Credit Agreement and paid into a trust account. There were some partial repayments but, following a payment default by PDVSA, on 3rd December 2018, the loans were accelerated and the moneys in the trust accounts appropriated to discharge overdue principal and debt.

10. Notwithstanding that appropriation, PDVSA was said to be liable to BSJI under clause 3.04(c) of the 2017 Credit Agreement, headed "Compensation for loss", which required PDVSA to compensate BSJI for:

> "… the loss of anticipated profits equal to the present value of all fees and interest payable to BSJI through the final maturity date of each loan".

effectively, the loss by BSJI of anticipated profits under the Credit Agreement.

*The PDVSA proceedings*

11. On 18th May 2020, proceedings were commenced by BSJI against PDVSA in the Commercial Court. On 25th June 2020, BSJI issued an application for summary judgment.

12. The application came before Foxton J on 31st July 2020. At that hearing, PDVSA, which had until very recently failed to participate in the proceedings, took a point that the proceedings had not been properly served upon it. That point was determined against PDVSA by Foxton J on the basis that, pursuant to CPR rule 6.11 and clause 10(c) of the Credit Agreement, the proceedings had been properly served within the jurisdiction on Maples & Calder, which I will refer to in the future simply as Maples, a process agent that had been appointed by BSJI in default of payment by PDVSA.

13. Foxton J acceded to an application by PDVSA that the summary judgment application should be adjourned. It was eventually heard on 17th October 2020 by Cockerill J, along with a similar application for summary judgment in respect of sums alleged to be due from PDVSA under the 2016 Credit Agreement.

14. As is apparent from Cockerill J's 4th November 2020 judgment, three matters were raised before her by PDVSA.

15. The first concerned the impact of US sanctions on PDVSA's payment obligations. Arguments were advanced by PDVSA that the sanctions had the effect of suspending PDVSA's payment obligations under the Credit Agreement. Alternatively, it was argued that, by reason of the rule in *Ralli Bros v Compania Naviera Sota y Aznar* [1920] 2 KB 286, PDVSA's payment obligations were unenforceable. Alternatively again, it was argued that the Rome I Regulation conferred a discretion on the court to apply what was said to be a mandatory overriding provision of the law of the place of performance, here a US system of law, to a contract governed by English law.

**Exhibit B - 11**

16.     The second matter that was raised before Cockerill J by PDVSA was an argument that concerned the English law rule against penalties.  In essence, it was said by PDVSA that clause 3.04(c) of the Credit Agreement, which provided for BSJI to be paid its anticipated profits, was unenforceable as a penalty.

17.     Thirdly, and finally, PDVSA raised issues about the reasonableness of sums that were claimed by BSJI under the Credit Agreement by way of costs and expenses.

18.     PDVSA had no real success before Cockerill J.  Specifically, and dealing with the three points:

    i)      PDVSA's first point failed on the basis that it was common ground that the relevant US executive orders contained a dispensation provision which disapplied the relevant sanctions if a licence was obtained.  That being so, Cockerill J held that lawful performance under US law was possible and that the burden lay upon PDVSA to obtain the necessary licence.  Cockerill J expressed doubt as to whether the very narrow gateway in *Ralli Bros* was engaged in any event.  She held that Article 9(3) of the Rome I Regulation added nothing to PDVSA's other arguments.

    ii)     PDVSA's second point also failed.  Cockerill J held that clause 3.04(c) of the 2017 Credit Agreement was not an unenforceable penalty.

    iii)    As for the third point, Cockerill J resolved the argument between the parties by adopting what had been both parties' backstop argument, namely to order that costs should be payable not under the contractual provisions but under section 51 of the Senior Courts Act 1981, to be subject to a detailed assessment on the indemnity basis.

19.     On 3rd December 2020 an order was made by Cockerill J reflecting her earlier judgment.  I observe in passing that the order provided that interest should accrue on the principal debt amount of $30,951,078 after judgment at the contractual rates prescribed for the two loans.

20.     In her 3rd December 2020 order, Cockerill J refused PDVSA permission to appeal.  Permission was also refused on paper by the Court of Appeal, and on 8th March 2021 Males LJ refused permission on a renewed oral application.  He did so on the basis that, since the date of Cockerill J's judgment, BSJI had itself obtained a licence from OFAC, being the relevant US body, allowing BSJI to receive payment from PDVSA, and indeed payment from the defendant.  Males LJ found that this rendered any appeal in relation to the first point academic, save in so far as it might have an impact on costs.  That issue was resolved by BSJI agreeing to forgo the costs order made in its favour by Cockerill J, and agreeing to pay PDVSA's costs.  Cockerill J's order was amended to that extent.  Permission to appeal was refused on the penalty issue.

*Proceedings against the defendant*

21.     As I said earlier, the defendant was party to the Credit Agreement as Guarantor.  The terms of the guaranty were set out in clause 9 of the Credit Agreement.  Clause 9.01 in particular provided in part as follows:

"The Guarantor hereby fully, irrevocably and unconditionally guarantees on a general unsecured basis to the Lender ... as primary obligor and not merely as surety, the prompt payment in full when due and payable in accordance with the terms of the Loan Documents, subject to any applicable and express grace periods, of any and all Obligations of the Borrower now or hereafter made, incurred or created, and however arising under this Agreement and the other Loan Documents."

22.    Clause 10.12 of the 2017 Credit Agreement provided that it was governed by English law, and also that the English courts should have exclusive jurisdiction to settle any disputes arising out of or in connection with the agreement.

23.    On 3rd December 2020, that is on the date of Cockerill J's order in the PDVSA proceedings, BSJI demanded payment from the defendant under its guaranty.  No payment was received, and so these proceedings were commenced on 18th December 2020.

24.    The claim form and the attached particulars of claim issued on that date sought payment under the guaranty of the principal debt of US$30,951,078, that is the amount of the principal debt reflected in Cockerill J's 3 December 2020 order, plus contractual interest up to and including 16th December 2020 in the amount of US$6,392,000.  As I will explain in a moment, a more up-to-date calculation of interest has been provided by Mr. Troen for the purposes of this application.

25.    On 12th May 2021, and thus after the proceedings between BSJI and PDVSA had been concluded, BSJI issued its application for summary judgment.  At that date, and indeed at the present date, the defendant had not filed an acknowledgment of service, and so permission to make the application for summary judgment was required under CPR rule 24.4(1), as was also sought in the application notice.

**Service**

26.    With that introduction, I turn to the first of the matters I identified earlier, the question of service.

27.    So far as that is concerned, clause 10.12(c) of the 2017 Credit Agreement obliged the defendant to appoint a Process Agent as authorised agent for the service of process in England, going on to provide that if it failed to do so then the lender could appoint an agent for service of process on behalf of the defendant itself.

28.    As Mr. Troen explained in his first witness statement, following the failure of the defendant to appoint a Process Agent, on 18th May 2020, BSJI appointed Maples as the defendant's Process Agent.  Maples wrote to the defendant on the same day confirming its appointment and Mr. Troen gives evidence that he served the claim form and the other documents on Maples at approximately 1.12 p.m. on 22nd December 2020.  He exhibits to his statement a copy of the Allen & Overy letter signed by Maples office manager acknowledging receipt.

29.    A similar process had been followed in relation to the appointment of Maples as Process Agent on behalf of PDVSA in the PDVSA proceedings.  Mr. Al-Attar, who

**Exhibit B - 13**

appeared before me on behalf of BSJI, quite properly identified in his skeleton argument that the defendant might argue that BSJI's right to appoint a Process Agent was limited to a situation where the defendant had initially appointed an agent but where a replacement agent was required. That argument was however advanced by PDVSA before Foxton J, and he rejected it. If it were pursued before me, I would reject it for the same reasons.

30.    On the evidence before me, I find that Maples was validly appointed as the defendant's Process Agent and that the claim documents were validly served on the defendant pursuant to CPR rule 6.11. Pursuant to CPR rule 6.14, service was deemed to have taken place on 24th December 2020. A certificate of service was filed on 12th January 2021.

31.    For completeness, as Mr. Troen explains, and as reflected by the documents he exhibits, Maples has in fact taken a number of steps to ensure that the claim documents were brought to the attention of the defendant in Venezuela. As Mr. Troen explains in his second witness statement, the application notice for summary judgment was also served on Maples this time on 13th May 2021 and again Maples have taken a number of steps to bring that application to the defendant's attention. I am satisfied that the application notice has been properly served.

**Proceeding in the defendant's absence; permission to apply for summary judgment**

32.    I then turn to, and take together, the questions of proceeding today in the absence of the defendant and also permission.

33.    The defendant has not filed an acknowledgment of service, nor has it appeared at this hearing. That gives rise to two questions: first, is it appropriate for me to proceed today in the absence of the defendant; and secondly, in circumstances where no acknowledgment of service has been filed, is it appropriate for me to give permission to BSJI to apply for summary judgment.

34.    The answer to both of those questions, in my judgment, is plainly yes, and for similar reasons.

35.    Despite the absence of any acknowledgment of service, there is ample evidence that the defendant has been served with the proceedings and with the application notice and is aware of, and has had an opportunity to participate in, these proceedings if it wished to do so. In particular, as Mr. Troen explains in his second witness statement, on 26th May 2021 Allen & Overy was contacted by Gresham Legal, who explained that they had been provided with a summary judgment application and supporting evidence and were in the process of considering the defendant's position, requesting an extension of time for filing responsive evidence.

36.    On 27th May 2021, an application for an extension of time for the filing of evidence was apparently filed by Gresham Legal on behalf of the defendant with the Commercial Court. There was some doubt at that stage as to whether Gresham Legal had been formally instructed to act on behalf of the defendant, but on 22nd June 2021 Gresham Legal wrote to the court explaining that it did indeed act for the defendant, that the defendant did not propose to submit evidence in response to the summary judgment application and that its application for an extension of time could be

dismissed, as it subsequently was by an order made by Robin Knowles J dated 28th June 2021.

37. There has been subsequent correspondence, in particular a letter from Gresham Legal sent to Allen & Overy on 30th June 2021 in which Gresham Legal explained that it did not propose to instruct counsel to attend the present hearing but that one member of the firm would attend the hearing simply as an observer.

38. CPR rule 23.11 provides that where a respondent fails to attend the hearing of an application, the court may proceed in its absence. In the circumstances that I have just described, I am satisfied that it is appropriate for me to do so here.

39. So far as the question of permission under CPR rule 24.4(1) is concerned, the applicable principles were summarised by Bryan J in *The European Union v The Syrian Arab Republic* [2018] EWHC 1712 (Comm) at paragraph [61] as follows (I omit internal references to the authorities):

> "(1) The purposes of the rule are to ensure that no application for summary judgment is made before a defendant has had an opportunity to participate in the proceedings ... and to protect a defendant who wishes to challenge the Court's jurisdiction from having to engage on the merits pending such application.
>
> "(2) Generally permission should be granted only where the Court is satisfied that the claim has been validly served and that the Court has jurisdiction to hear it. As was said in *Citicorp Trustee Company Limited v Al Sanea*, once those conditions are met there is generally no reason why the Court should prevent a claimant with a legitimate claim from seeking summary judgment.
>
> "(3) The fact that a summary judgment may be more readily enforced in other jurisdictions than a default judgment is a proper reason for seeking permission under CPR 24.4(1)."

40. Having regard to those principles, and having regard to the facts that I have outlined, I am satisfied that this is an appropriate case for me to grant permission under CPR rule 24.4(1), and accordingly grant that permission.

### Summary judgment

41. I turn then to the application for summary judgment itself.

*Principles*

42. So far as the principles are concerned, these are well known. They were formulated by Lewison J (as he then was) in *Easyair Limited v Opal Telecom Limited* [2009] EWHC 339 (Ch) at [15], in terms that were subsequently approved by the Court of Appeal in *AC Ward & Sons v Catlin (Five) Ltd* [2010] Lloyd's Rep. IR 301 at [24].

43. The first principle, as applied to this case, is that the court must consider whether the defendant has a realistic as opposed to a fanciful prospect of success on its defence,

realistic meaning a defence that is more than merely arguable but carries some degree of conviction.

*Application*

44.    So far as the application of these principles is concerned, the claim against the defendant, as I explained earlier, is made under the guaranty embodied in clause 9.01 of the Credit Agreement by which the defendant:

> "… fully, irrevocably and unconditionally guarantees on a general unsecured basis to the Lender ... as primary obligor and not merely as surety, the prompt payment in full when due and payable in accordance with the terms of the Loan Documents, subject to any applicable and express grace periods, of any and all Obligations of the Borrower now or hereafter made, incurred or created, and however arising under this Agreement and the other Loan Documents."

45.    The relevant obligation of the borrower for the purposes of the present application is the obligation that was discussed earlier in the context of the PDVSA proceedings, namely PDVSA's obligation under clause 3.04(c) to compensate BSJI for:

> "… the loss of anticipated profits equal to the present value of all fees and interest payable to BSJI through the final maturity date of each loan".

46.    Cockerill J has determined that PDVSA was liable to BSJI under clause 3.04(c) for the principal amount of US$30,951,078.  I have myself been shown the documents that support that figure and that liability.

47.    So far as the liability of the defendant is concerned, I agree with the submissions made in writing on behalf of BSJI, namely:

i)     that the defendant's obligation to pay the obligations arose when they were due and payable;

ii)    that as clause 9.01 says, the defendant's obligation is a primary obligation and not a secondary obligation in the sense of a "see it to" obligation; and

iii)   that, whether one construes the defendant's obligation under clause 9.01 as a conditional or concurrent obligation makes no difference.  In either case the defendant is subject to the same payment obligations as PDVSA and it is liable in debt to pay the same sums.  In the present case it is liable to pay the same sums as have been determined to be due from PDVSA under clause 3.04(c).

48.    As the defendant is subject to the same obligations as PDVSA, the claim against it is subject to the same defences as those available to PDVSA at least potentially.

49.    So far as that is concerned, were the defendant to advance the arguments previously articulated by PDVSA, namely the argument based on US sanctions and the argument that clause 3.04(c) was unenforceable as a penalty, for the reasons given by Cockerill J and, in addition, because a licence permitting payment without offending

US sanctions has now been procured, I would not regard those arguments as giving rise to a realistic prospect on the part of the defendant of defending the current claim.

50.   There are, I should say for completeness, provisions in clauses 9.04 and 9.05 of the Credit Agreement which mean that the defendant would be unlikely to be able successfully to advance arguments based on the illegality or unenforceability of the obligations in any event, even if PDVSA had been able to do so, a proposition supported by the decision of the Southern District of New York in the *Dresser-Rand* judgment to which I have been referred to.

51.   Leaving aside the reasonableness of costs, which I will come back to, no other possible defences have been identified by the defendant in correspondence or by Mr. Al-Attar in his submissions.  There are, as I see it, no other obviously available defences.

52.   The defendant, accordingly, in my judgment, has no realistic prospect of defending the claim against it for the principal debt of $30,951,078 for which PDVSA has already been found liable.  There is no other compelling reason why that matter should be disposed of at a trial.

53.   The position is essentially the same in relation to contractual interest save, of course, that since the date of Cockerill J's judgment, interest on the principal debt has continued to accrue at the contractual rates.  A calculation of the amount due as at the date of this hearing is set out in paragraph 11 of Mr. Troen's second witness statement which I have reviewed.  The current figure is $8,319,000.

54.   The total amount of principal and interest due from the defendant as at today's date is therefore $39,270,078.  That is made up of the principal debt of $30,951,078, plus interest of $8,319,000.  Consistent with the approach taken by Cockerill J, I consider that interest should continue to accrue on the principal debt of $30,951,078 after judgment at the contractual rates.

55.   It remains to consider BSJI's claim to recover costs.  So far as that is concerned, clause 10.4 of the 2017 Credit Agreement, provides as follows:

> "The Borrower shall pay ... (ii) all reasonable out of pocket expenses incurred by [the] Lender and its Affiliates (including the reasonable and documented fees, charges and disbursements of any counsel for [the] Lender and its Affiliates) in connection with the enforcement or protection of its rights (A) in connection with this Agreement."

56.   A claim for costs under this clause was pursued by BSJI before Cockerill J, but as I explained earlier, she ultimately adopted BSJI's backstop proposal that costs should be payable not under the contractual provision, but under section 51 of the Senior Courts Act 1981 on an indemnity basis subject to a detailed assessment.

57.   On the 30th June 2021, Gresham Legal wrote on behalf of the defendant to Allen & Overy in connection with the application for summary judgment and in connection with the present hearing.  In relation to BSJI's claim for costs,

**Exhibit B - 17**

<u>David Edwards QC</u>
<u>Approved Judgment</u>

BSJI v PDVSA Petróleo, SA

Gresham Legal raised similar points in relation to reasonableness to those raised by PDVSA before Cockerill J, but Gresham Legal then went on to say this:

> "Our client cannot consent to judgment being entered against it in respect of any part of the claim.  However, if your client were to amend the order it seeks on its summary judgment application, such that the costs and expenses are to be paid by our client on the indemnity basis subject to detailed assessment, if not agreed, i.e. the same form of order that was made in the borrower claims, our client will not oppose the application."

58.     Allen & Overy responded on 1st July 2021 explaining that it was prepared to agree to that proposal and enclosing a revised draft order.

59.     There can, in my judgment, be no doubt that BSJI is entitled in principle to recover its costs.  In the light of the parties' agreement, I consider it appropriate to order that those costs should be paid on the indemnity basis but subject to a detailed assessment.

**Disposition**

60.     For the reasons I have just given, I therefore give permission to BSJI to apply for summary judgment and I grant summary judgment to BSJI on its claim.  I will make an order in the terms that are sought.

- - - - - - - - - - -

**Exhibit B - 18**

CLAIM NO.: CL-2020-000834 2021

IN THE HIGH COURT OF JUSTICE

BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES

COMMERCIAL COURT (QBD)                                     CL-2020-000834

BEFORE: DEPUTY HIGH COURT JUDGE DAVID EDWARDS QC IN PUBLIC

DATED: 9 JULY 2021

BETWEEN:

### BANCO SAN JUAN INTERNACIONAL, INC

**Claimant**

-and-

### PDVSA PETRÓLEO, S.A.

**Defendant**

---

### ORDER

---

**UPON** the application of the Claimant in the above-numbered claim (the "**Claim**") for summary judgment on the Claim by its application notice dated 12 May 2021 (the "**Application**"). The Claim is made pursuant to the Claimant's rights to payment under the credit agreement dated 6 April 2017 made, *inter alia*, between the Claimant and the Defendant (the "**2017 Credit Agreement**")

**UPON** reading the evidence

**UPON** the Defendant confirming in correspondence that it does not oppose the Application on the basis that BSJI agrees to seek its costs on an indemnity basis subject to detailed assessment if not agreed

**UPON** hearing Mr Adam Al-Attar (leading Jamil Mustafa) for the Claimant

**UPON** the Court being satisfied of the due service of the Claim in accordance with Rule 6.11 of the Civil Procedural Rules 1998 (as amended) and that the Claimant is entitled to summary

1

judgment on the Claim because the Defendant has, on the evidence read and submissions made by the Claimant, no realistic prospect of successfully defending the Claim and because there is no other reason to refuse the Application

**UPON** the Court granting the Claimant permission to make an application for summary judgment pursuant to CPR Part 24.4(1)(i)

**UPON** it being recorded that "Loan 1" and "Loan 2" bear the meaning ascribed by the relevant definitions in section 1.01 of the 2017 Credit Agreement.

**IT IS ORDERED THAT: -**

1. Judgment is hereby entered in the Claim in favour of the Claimant and the Defendant shall therefore pay to the Claimant within 14 days the aggregate sum of US$39,270,078 which aggregate sum comprises:

   a. the principal debt owed (US$30,951,078); and

   b. contractual interest accrued to the date of this Order (US$8,319,000).

2. Interest shall accrue on the principal debt amount of US$30,951,078, which sum is due at the contractual rates of 11% per annum under Loan 1 and 10.8% per annum under Loan 2 to which the Claimant is entitled after judgment pursuant to the terms of the 2017 Credit Agreement.

3. The Defendant shall pay the Claimant's costs in the Claim on the indemnity basis, subject to detailed assessment if not agreed.

**Exhibit B - 21**