# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BANCO SAN JUAN INTERNACIONAL INC., <br><br> *Plaintiff*, <br><br> v. <br><br> PETRÓLEOS DE VENEZUELA, S.A. and PDVSA PETRÓLEO, S.A., <br><br> *Defendants*. | C.A. No. 1:22-CV-01315-LPS |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

OF COUNSEL:

Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

March 6, 2023

HEYMAN ENERIO GATTUSO & HIRZEL LLP
Samuel T. Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
SHirzel@hegh.law

*Attorneys for Defendants Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A.*

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

ARGUMENT.......................................................................................................................3

    I.      This Court Is Not the Proper Venue under the FSIA................................................3

    II.     Alternatively, This Case Must Be Dismissed for Improper Service of Process and Lack of Personal Jurisdiction under the FSIA .....................................5

          A.     There Is No "Special Arrangement" on Service of Process in the U.S. .........................................................................................................6

          B.     Plaintiff Failed to Serve the PDVSA *ad hoc* Board......................................7

    III.    Alternatively, This Case Must Be Dismissed for Lack of Subject Matter Jurisdiction under the FSIA and on the Merits ........................................................8

CONCLUSION..................................................................................................................10

# **TABLE OF AUTHORITIES**

**Pg.**
**Cases**

*Abelesz v. Magyar Nemzeti Bank*,
  692 F.3d 661 (7th Cir. 2012) ............................................................................................... 9

*Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*,
  788 F. 3d 1329 (11th Cir. 2015) ......................................................................................... 9

*Asemani v. Islamic Republic of Iran*,
  No. 18-CV-00368-CRB (PR), 2018 U.S. Dist. LEXIS 102532
  (N.D. Cal. June 18, 2018) .................................................................................................. 5

*Berkowitz v. Republic of Costa Rica*,
  288 F. Supp. 3d 166 (D.D.C. 2018) ................................................................................... 6

*Butler v. Sukhoi Co.*,
  579 F.3d 1307 (11th Cir. 2009) ......................................................................................... 8

*Chiejina v. Fed. Republic of Nigeria*,
  No. 21-2241 (RJL), 2022 U.S. Dist. LEXIS 152675 (D.D.C. Aug. 23, 2022) .......................... 6

*Cottman Transmission Sys. v. Martino*,
  36 F.3d 291 (3rd Cir. 1994) ............................................................................................... 5

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  932 F.3d 126 (3d Cir. 2019) .............................................................................................. 8

*Detroit Int'l Bridge Co. v. Gov't of Canada*,
  787 F. Supp. 2d 47 (D.D.C. 2011) ..................................................................................... 4

*Enron Nig. Power Holding, Ltd. v. Fed. Republic of Nig.*,
  225 F. Supp. 3d 18 (D.D.C. 2014) ................................................................................. 6, 7

*Guaranty Trust Co. v. United States*,
  304 U.S. 126 (1938) .......................................................................................................... 8

*Jiménez v. Palacios*,
  250 A.3d 814 (Del. Del. Ch. 2019), *aff'd*, 237 A.3d 68 (Del. 2020) .............................. 1, 8

*Library of Cong. v. Shaw*,
  478 U.S. 310 (1986) .......................................................................................................... 9

*Micula v. Gov't of Rom.*,
  714 F. App'x 18 (2d Cir. 2017) ......................................................................................... 5

*Orange Middle E. & Afr. v. Republic of Eq. Guinea*,
　No. 15-cv-849 (RMC), 2016 U.S. Dist. LEXIS 65147 (D.D.C. May 18, 2016) ........................ 6

*Palladian Partners, L.P. v. Province of Buenos Aires*,
　2022 U.S. Dist. LEXIS 200875 (S.D.N.Y. Nov. 2, 2022) .......................................................... 5

*Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*,
　836 F.2d 173 (3d Cir. 1988) ....................................................................................................... 8

*Rusoro Mining Ltd. v. Bolivarian Republic of Venez.*,
　No. 18-7044, 2019 U.S. App. LEXIS 17543 (D.C. Cir. May 1, 2019) ...................................... 8

*Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*,
　Civ. No. 1:18-cv-01963-LPS, 2019 U.S. Dist. LEXIS 214167
　(D. Del. Dec. 12, 2019) ..................................................................................................... 2, 3, 4

*United States ex rel. Doe v. Heart Sol., PC*,
　923 F.3d 308 (3rd Cir. 2019) ...................................................................................................... 7

*Uni-Top Asia Inv. Ltd. v. Sinopec Int'l Petro. Expl. & Prod. Corp.*,
　600 F. Supp. 3d 73 (D.D.C. 2022) .............................................................................................. 4

*Vivadent, Inc. v. Darby Dental Supply Co.*,
　655 F. Supp. 1359 (D.N.J. 1987) ................................................................................................ 4

*World Wide Minerals v. Republic of Kazakhstan*,
　296 F. 3d 1154 (D.C. Cir. 2002) ................................................................................................. 9

*Zazzali v. Swenson*,
　852 F. Supp. 2d 438 (D. Del. 2012) ........................................................................................... 5

**Statutes**

10 Del. C. § 4803 ............................................................................................................................ 10

28 U.S.C. § 1330(b) ................................................................................................................... 2, 6

28 U.S.C. § 1391(f) ................................................................................................................ 3, 4, 5

28 U.S.C. § 1406(a) ......................................................................................................................... 5

28 U.S.C. § 1605(a)(1) .................................................................................................................... 9

28 U.S.C. § 1608(b)(1) .................................................................................................................... 6

Defendants respectfully submit this Reply in Support of their Motion to Dismiss.[1]

## INTRODUCTION

Unlike the plaintiffs in any other case brought in this Court seeking to ultimately attach and execute on the PDVH shares, Plaintiff here commenced this litigation after the U.S. recognition of the interim government and derecognition of the Maduro regime and after the Delaware courts ruled that the PDVH shares were the sole property of the PDVSA *ad hoc* Board. *See Jiménez v. Palacios*, 250 A.3d 814 (Del. Ch. 2019), *aff'd*, 237 A.3d 68 (Del. 2020). Plaintiff chose to ignore these facts and to litigate, both in the U.K. and in this action, as if there was no distinction between the Maduro regime and the *ad hoc* Board and as if the PDVH shares were the property of the Maduro-dominated PDVSA in Venezuela. Plaintiff never provided any notice of this case or the underlying U.K. proceedings to the PDVSA *ad hoc* Board. If Plaintiff had wanted to satisfy a judgment by attaching these shares, it could have served the PDVSA *ad hoc* Board in the U.K. proceedings. Plaintiff instead deliberately chose to pursue the Maduro regime's PDVSA and only notify persons affiliated with the Maduro regime in Venezuela, knowing that those Maduro-affiliated persons have no claim to ownership of the PDVH shares. D.I. 22 at ¶ 3-8. And in this action to enforce its judgments, Plaintiff again deliberately chose not to serve the PDVSA *ad hoc* Board and, instead, served persons affiliated with the Maduro regime in Venezuela.

Plaintiff's tactic cannot be countenanced. Its purported service of process is clearly deficient and any waivers of immunity in the underlying agreements should not be recognized by a U.S. court in these circumstances. And no foreign judgments rendered in these circumstances can be enforced by a U.S. court as a matter of law. However, this Court need not address these

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in Defendants' Motion. D.I. 17.

issues of foreign sovereign immunity or the merits of this case because, as explained below, this Court is not the proper venue for this case.

Indeed, Plaintiff has not provided any valid basis for commencing this lawsuit in Delaware. Plaintiff bases its entire venue argument on the PDVH shares. Not only are those shares not owned by the Maduro PDVSA, but this Court rejected the identical gambit by another creditor in *Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela* ("*Saint-Gobain*"), Civ. No. 1:18-cv-1963-LPS, 2019 U.S. Dist. LEXIS 214167 (D. Del. Dec. 12, 2019). Plaintiff offers no plausible distinction between this case and *Saint-Gobain*. Nor does Plaintiff address the myriad of other cases that similarly held that venue is not proper simply because the defendant owns shares in a Delaware corporation. Accordingly, this case must be dismissed or transferred to the FSIA's default venue, the District Court for the District of Columbia.

Plaintiff also seeks to bypass the FSIA's service of process and personal jurisdiction requirements through misrepresentations and sleight of hand. First, Plaintiff misleadingly tells the Court that Defendants received and acknowledged service of process. But Plaintiff never provided any notice to the Defendants. Rather, Plaintiff's own evidence shows that it purported to serve persons affiliated with the Maduro regime in Venezuela who have no standing to appear on behalf of Defendants in this case. Plaintiff also argues that the underlying Credit Agreements contain a "special arrangement" on service of process under the FSIA. But those provisions are explicitly limited to proceedings in England – and make no mention of the United States. Courts have consistently held that such provisions do not constitute a "special arrangement" under the FSIA. Because Plaintiff never served Defendants in accordance with the FSIA there is no basis for personal jurisdiction under 28 U.S.C. § 1330(b).

2

Finally, while this Court is not the proper venue for this case and therefore need not address the issues of subject matter jurisdiction or the merits, the Complaint does not identify any applicable exception to immunity under the FSIA. Furthermore, as explained below, Plaintiff's deliberate litigation strategy of refusing to provide any notice of any proceedings to the PDVSA *ad hoc* Board precludes any finding that PDVSA waived its immunity and renders the underlying U.K. default judgments unenforceable on the merits.

## ARGUMENT

### I. This Court Is Not the Proper Venue under the FSIA

Plaintiff argues, without any legal support, that venue is proper under Section 1391(f)(3) because PDVSA is "doing business" in Delaware through its ownership of PDVH and through PDVH's indirect ownership of CITGO Petroleum Corp. Plaintiff also argues that venue is proper because "the assets BSJI seeks to attach [i.e., the PDVH shares] are located in Delaware." D.I. 21 at 3. However, both arguments are contrary to overwhelming case law, including this Court's decision in *Saint-Gobain,* 2019 U.S. Dist. LEXIS 214167, at \*26-29, that rejected similar attempts by another creditor to bypass the FSIA's venue requirements.

In *Saint-Gobain*, this Court rejected the identical argument that a party is "doing business" in Delaware by virtue of its ownership of the PDVH shares. Plaintiff tries to distinguish *Saint-Gobain* on the grounds that this Court made that ruling as to Venezuela, not PDVSA. D.I. 21 at 16. To be sure, this Court dismissed PDVSA on improper service of process grounds and therefore did not address PDVSA's venue arguments. Nevertheless, as this Court explained in its decision: "Saint-Gobain's contention that Delaware is a proper venue turns on two propositions: that PDVSA is 'doing business' in Delaware (through PDVH) and that PDVSA is Venezuela's alter ego." *Saint-Gobain*, 2019 U.S. Dist. LEXIS 214167, at \*26. This Court then explicitly rejected both propositions. Thus, in holding that venue was improper as to

3

Venezuela, this Court unequivocally rejected Saint-Gobain's argument that PDVSA was "doing business" in Delaware through its ownership of PDVH. *See id.* at *26-28.

Furthermore, as this Court explained in *Saint-Gobain*, "doing business" under Section 1391(f)(3) requires a showing that the defendant's "activities within the district are such that its business has become localized and is in operation within the district so that some state would probably require the foreign corporation to be licensed as a condition precedent to doing that business." *Saint-Gobain*, 2019 U.S. Dist. LEXIS 214167, at *27-28 (quoting *Vivadent (USA), Inc. v. Darby Dental Supply Co.*, 655 F. Supp. 1359, 1362 (D.N.J. 1987)). It is insufficient to show that the defendant owns a subsidiary in the district. Rather, there needs to be evidence that the defendant does business in the district directly. *See Uni-Top Asia Inv. Ltd. v. Sinopec Int'l Petro. Expl. & Prod. Corp.*, 600 F. Supp. 3d 73, 79 (D.D.C. 2022).

Plaintiff's alternative argument that venue is proper because it hopes to enforce a potential future judgment against PDVSA's shares of PDVH is likewise foreclosed by *Saint-Gobain*. Plaintiff argues that there the plaintiff never argued that venue was proper based on the presence of potentially attachable assets in Delaware. However, plaintiff in that case argued that venue was proper because "Saint-Gobain ultimately seeks the same relief [as Crystallex]: the enforcement of its award … against assets of Venezuela and PDVSA in the District." *See* Plaintiff's Sur-Reply, *Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*, Civ. No. 1:18-cv-01963-LPS, [D.I. No. 28 at p. 3] (D. Del. Sept. 3, 2019). While this Court did not explicitly address that particular argument in its decision, it nonetheless held that venue was improper under the FSIA. *Saint-Gobain,* 2019 U.S. Dist. LEXIS 214167, at *28-29. And for good reason: any other conclusion would make this District a venue for any lawsuit against any defendant who happens to own shares of a Delaware corporation. The FSIA's venue

4

statute is not that broad.  Indeed, courts have routinely held that Section 1391(f)(1) does not apply simply because a defendant has property in the district that might be available to satisfy an eventual judgment.  *See Micula v. Gov't of Rom.*, 714 F. App'x 18, 21 (2d Cir. 2017); *Palladian Partners, L.P. v. Province of Buenos Aires*, No. 21 Civ. 5958 (CM), 2022 U.S. Dist. LEXIS 200875, at *9 (S.D.N.Y. Nov. 2, 2022); *Asemani v. Islamic Republic of Iran*, No. 18-CV-00368-CRB (PR), 2018 U.S. Dist. LEXIS 102532, at *4-5 (N.D. Cal. June 18, 2018).  Plaintiff does not attempt to distinguish these cases or cite any authority to the contrary.

Finally, all of Plaintiff's arguments fail because it cannot identify any basis for venue as to Defendant PPSA.  Plaintiff's venue arguments all center on PDVSA's ownership of the PDVH shares.  But it is undisputed that PPSA does not own any interest in those shares or any other assets in Delaware.  Because venue is not proper as to PPSA, the case should be dismissed for improper venue or transferred in its entirety to the FSIA's default venue, the District of Columbia.  Proper venue must be shown for each Defendant.  *Zazzali v. Swenson*, 852 F. Supp. 2d 438, 446 (D. Del. 2012).  Failure to do so requires the Court to dismiss the action, transfer the entire action to a venue proper for all Defendants, or to sever the claims, retaining jurisdiction only over the proper Defendants.  *See* 28 U.S.C. § 1406(a); *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 296 (3rd Cir. 1994).  And severance is inappropriate where, as here, the conduct of a co-defendant is central to the action and would "require the same issues to be litigated in two places."  *Id.*  The only appropriate action here is the dismissal or transfer of the entire action.

## II. Alternatively, This Case Must Be Dismissed for Improper Service of Process and Lack of Personal Jurisdiction under the FSIA

Plaintiff argues that service in the case was made through Maples & Calder – a U.K. law firm that Plaintiff itself purported to appoint as PDVSA's service agent – pursuant to provisions

in the underlying Credit Agreements and that those provisions constitute a "special arrangement" on service of process under 28 U.S.C. § 1608(b)(1). There are two problems with this argument. First, the service provisions in the Credit Agreements do not provide for service in the U.S. and therefore, as a matter of law, do not constitute a "special arrangement" on service under the FSIA. Second, Plaintiff never attempted to serve (or even notify) PDVSA's *ad hoc* Board, which is the actual owner of the property upon which Plaintiff bases its venue selection. Because Plaintiff failed to serve Defendants in accordance with the FSIA, there is no basis for personal jurisdiction under Section 1330(b).

### A. There Is No "Special Arrangement" on Service of Process in the U.S.

It is well established that, to constitute a "special arrangement" for service of process under Section 1608(b)(1), a contract must unequivocally provide for service of process on the foreign defendant in the particular U.S. court proceeding at issue. *See Chiejina v. Fed. Republic of Nigeria*, No. 21-2241 (RJL), 2022 U.S. Dist. LEXIS 152675, at *7-8 (D.D.C. Aug. 23, 2022); *Berkowitz v. Republic of Costa Rica*, 288 F. Supp. 3d 166, 173 (D.D.C. 2018); *Orange Middle E. & Afr. v. Republic of Eq. Guinea*, No. 15-cv-849 (RMC), 2016 U.S. Dist. LEXIS 65147, at *8 (D.D.C. May 18, 2016); *Enron Nig. Power Holding, Ltd. v. Fed. Republic of Nig.* ("*Enron*"), 225 F. Supp. 3d 18, 22-23 (D.D.C. 2014).

Plaintiff asserts that the Credit Agreements provide a mechanism to serve PDVSA in "*any proceedings in any jurisdiction*." D.I. 21 at 2 (emphasis original). The Agreements contain no such language. The 2016 Credit Agreement states:

> The Borrower hereby agrees forthwith to appoint a Process Agent as its authorized agent **for service of process in England**. After such appointment, if for any reason the Process Agent shall cease to be such agent for the service of process, the Borrower hereby agrees forthwith to appoint a new agent **for service of process in England** … If the Borrower fails to comply with such obligation

> to appoint a new agent for **service of process in England**, the Lender may appoint an agent **for service of process in England**.

D.I. 21, Ex. A at § 9.12(c) (emphasis added). The 2017 Credit Agreement is substantively identical. D.I. 21, Ex. B at § 10.12(c). Both Credit Agreements only concern service of process in proceedings in England – and neither says anything about service of process in U.S. proceedings. Accordingly, those provisions do not constitute a "special arrangement" for service under the FSIA. *See Enron,* 225 F. Supp. 3d at 23.

As explained in the Motion, the *Enron* case is on all fours. While Plaintiff argues that *Enron* is distinguishable on the grounds that the parties' agreement in that case only addressed service of process in proceedings in England and Wales, the service provisions in the Credit Agreements likewise only address service in English proceedings. The Agreements here do not mention the United States. As the court in *Enron* held, "[t]he parties' inclusion of a specific provision for legal service only in another jurisdiction [i.e., England] indicates that they did not intend to create a 'special arrangement for service' for proceedings in the United States." 225 F. Supp. 3d at 23. That conclusion is equally applicable here.[2]

B.   **Plaintiff Failed to Serve the PDVSA *ad hoc* Board**

While Plaintiff misleadingly tells this Court that PDVSA received actual notice of this lawsuit and even "acknowledged receipt" of service (D.I. 21 at 10 (emphasis original)), Plaintiff's own evidence establishes that it purported to serve persons affiliated with the Maduro

---

[2] Plaintiff's suggestion that PDVSA is estopped from challenging service of process because the U.K. courts found that service in the U.K. proceedings was made in accordance with the Credit Agreements is frivolous. The U.K. courts did not rule (and could not have ruled) on whether the service provisions applied to future proceedings in the United States, or whether service was proper under U.S. law, namely the FSIA. Moreover, the PDVSA *ad hoc* Board was never notified of the U.K. proceedings and thus never had any opportunity to litigate any issues in those proceedings. Thus, the U.K. courts' rulings have no collateral effect in this case. *See United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 316 (3rd Cir. 2019).

7

regime in Venezuela. But service on those persons does not constitute service on the PDVSA *ad hoc* Board. Given the fact that Plaintiff's admitted ultimate litigation objective is to attach and execute upon the PDVH shares and given the fact that Plaintiff knew that those assets were owned by the PDVSA *ad hoc* Board, it is deeply troubling that Plaintiff purported to serve persons affiliated with the Maduro regime and deliberately chose not to provide any notice of this case to the PDVSA *ad hoc* Board.[3]

### III. Alternatively, This Case Must Be Dismissed for Lack of Subject Matter Jurisdiction under the FSIA and on the Merits

This Court need not address subject matter jurisdiction or the merits because, as explained above, this Court is not the proper venue for this case. Nevertheless, it bears noting that the Complaint does not identify any applicable exceptions to immunity and therefore fails to plead any basis for subject matter jurisdiction under the FSIA. Thus, the Complaint is facially deficient, and this case must be dismissed for lack of subject matter jurisdiction. *See Butler v. Sukhoi Co.*, 579 F.3d 1307, 1313-14 (11th Cir. 2009). Recognizing this facial deficiency, Plaintiff argues for the first time in its Opposition that PDVSA waived its foreign sovereign immunity in the Credit Agreements – documents that Plaintiff made the tactical choice not to disclose until now. D.I. 21 at 12. But Plaintiff cannot amend its Complaint through its Opposition brief. *See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). In any event, Plaintiff's newly asserted waiver argument cannot be sustained.

---

[3] Plaintiff must have also been aware that the Maduro-affiliated persons it purported to serve in Venezuela have no standing to appear in this case. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 135 n.2 (3d Cir. 2019) (citing *Guaranty Trust Co. v. United States*, 304 U.S. 126, 138 (1938)); *Rusoro Mining Ltd. v. Bolivarian Republic of Venez.*, No. 18-7044, 2019 U.S. App. LEXIS 17543, at *1-2 (D.C. Cir. May 1, 2019); *Jiménez*, 250 A.3d at 830-31.

The FSIA's wavier exception, 28 U.S.C. § 1605(a)(1), is construed and applied narrowly. *See, e.g., Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 670 (7th Cir. 2012). It is well established that "explicit waivers of sovereign immunity are narrowly construed 'in favor of the sovereign.'" *World Wide Minerals v. Republic of Kazakhstan*, 296 F. 3d 1154, 1162 (D.C. Cir. 2002) (quoting *Library of Cong. v. Shaw*, 478 U.S. 310, 318 (1986)); *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 788 F. 3d 1329, 1338 (11th Cir. 2015) (same).

Putting aside the fact that the PDVSA *ad hoc* Board never approved those Agreements and had never even seen a copy of them until after this action was commenced, Cardenas Decl. ¶ 5, the alleged waiver provisions should not be construed as broadly waiving the PDVSA *ad hoc* Board's immunity under any and all circumstances. Rather, this Court must construe those provisions narrowly and in PDVSA's favor. *See World Wide Minerals*, 296 F. 3d at 1162. Those provisions should not be read as waiving the PDVSA *ad hoc* Board's immunity under the circumstances of this case in which Plaintiff sued a different entity in the U.K. and the PDVSA *ad hoc* Board was never given notice of any proceedings. The Credit Agreements themselves make clear that Plaintiff had an obligation to properly serve the Defendants. Yet, despite the fact that Plaintiff's ultimate litigation goal is to obtain an attachment of the PDVH shares, Plaintiff has pursued a litigation strategy to keep the owner of the PDVH shares – the PDVSA *ad hoc* Board – in the dark. Cardenas Decl. ¶¶ 3-5.

Plaintiff made a deliberate choice to keep the PDVSA *ad hoc* Board in the dark and on the sidelines and to treat Maduro-affiliated persons as the parties to the Credit Agreements. Having made that choice, Plaintiff should be estopped from arguing that the PDVSA *ad hoc* Board waived its immunity under those Agreements and from pursuing the PDVSA *ad hoc* Board's assets. Plaintiff chose to serve the Maduro PDVSA in both the U.K. actions and

Plaintiff can take its judgments to some jurisdiction where that entity owns property. But, it cannot bring it here to the United States and seek to enforce it against property of the *ad hoc* Board.

Furthermore, Plaintiff's failure to notify the PDVSA *ad hoc* Board, and its tactical decision to litigate only with the Maduro regime, also renders the U.K. judgments unenforceable on the merits. 10 Del. C. §§ 4803(b)(2), 4803(c)(1), (3), (8).[4]

## CONCLUSION

This Court should grant Defendants' Motion and dismiss this case.

HEYMAN ENERIO GATTUSO & HIRZEL LLP

*/s/ Samuel T. Hirzel, II*
Samuel T. Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
SHirzel@hegh.law

*Attorneys for Defendants Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A.*

OF COUNSEL:

Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

Dated: March 6, 2023

---

[4] Defendants raise the issue of subject matter jurisdiction at this junction out of an abundance of caution to avoid any contention that its sovereign immunity was waived by failing to do so. However, if the Court ultimately determines that Defendants were properly served and are subject to personal jurisdiction and that venue is proper under the FSIA, Defendants are prepared to more fully brief the issues of subject matter jurisdiction under the FSIA and the merits at that time.